IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BRYANNA KULP,                  : Civ. No. 1:22-CV-1818
                               :
    Plaintiff,                 :
                               :
       v.                  :
                               : (Chief Magistrate Judge Bloom)
NORFOLK SOUTHERN RAILWAY       :
COMPANY,                       :
                               :
    Defendant.                 :

## MEMORANDUM OPINION

### I.   Introduction

This case comes before us for consideration of a summary judgment motion filed by the defendant, Norfolk Southern Railway Company ("Norfolk Southern"). (Doc. 39). The plaintiff, Bryanna Kulp, was an employee of Norfolk Southern as a Track Laborer. (Doc. 1-2 at 8). Kulp brought this action, alleging that she was subjected to sexual harassment and a hostile work environment in violation of Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Relations Act ("PHRA"). (Doc. 1-2 at 7). Kulp contends that her supervisors engaged in conduct that amounted to sexual harassment that ultimately led her to resign her position.

Norfolk Southern now moves for summary judgment, arguing that Kulp cannot satisfy the elements of a hostile work environment claim. (Doc. 40). After consideration, we agree and will grant the motion for summary judgment.

## II.  Background

In January 2015, the plaintiff, Bryanna Kulp, was hired as a Track Laborer at Norfolk Southern. (Doc. 1-2 at 8). During her six years with Norfolk Southern, she worked in various positions, including being a Welder, a Vehicle Operator, and a Machine Operator. (Doc. 43 at 4). As one of the only female employees in her shop, Kulp was given a key to a designated female restroom. (Doc. 41-5 at 32). However, Kulp alleges that male employees were using "her" restroom. (Doc. 1-2 at 9). The female restroom was only accessible by key and on occasion, supervisors would let male employees into the restroom.  (Doc. 41-13 at 5). However, Kulp never had any encounters with men in the restroom. (Do. 43 at 19).

About a year into Kulp's employment, a coworker sent her an unsolicited provocative photograph. (Doc. 43 at 5). Although Kulp did not make a complaint, the then-Division Engineer became aware she received the photograph and let her know he understood that she did not

make a report because she was a newer employee. (Doc. 43 at 5-6). Kulp alleges no further incidents until August 2020, when she a took a day off work for a sore throat. (Doc. 1-2 at 8). Kulp alleges that her supervisor, Dylan Wetzel, sexually harassed her when he laughed and told her, "I betcha I can tell you why your throat was sore." (Doc. 1-2 at 8). A year later, in June 2021, Kulp alleges that Joe Spadone asked Kulp what she was doing "down in the woods" with her male coworker. (Doc. 43-2 at 3). Around this same time, Kulp alleges that Wetzel set her up to fail when he asked her to perform a duty that she was not trained to do and did not have machine rights to operate the equipment. (Doc. 1-2 at 9). Kulp also alleges that her coworkers put grease on the door handle of her work truck to objectify and degrade her. (Doc. 42 at 6). Finally, in September 2021, Kulp alleges that Wetzel sexually harassed her when she was in his office waiting for him and when he arrived allegedly asked her if she had been "sniffing his seat." (Doc. 1-2 at 8-9).

To appropriately address all workplace complaints, Norfolk Southern has an anti-harassment policy and reporting procedure that strictly prohibits all types of workplace harassment. (Doc. 41-2 at 2). Employees are educated and trained on these policies and are aware that

it is their obligation to report harassment, as the policy directs employees to report any harassment or retaliation to "their immediate nonagreement supervisor or the Corporation's EEO office." (Doc. 41-2, at 3; 43 at 4-5). The policy informs employees of the investigative process and any corrective action that can be taken for claims the Corporation deems to have merit, including verbal, written, or final warnings, demotion, transfer, and termination. (Doc. 41-2 at 3).

At the end of October 2021, Kulp sent an email to Senior EEO Officer, Susan Decker, informing her of the allegations referenced in the complaint. (Doc. 1-2 at 9). Hours later, Decker responded indicating she would begin an investigation into Kulp's complaints. (Doc. 41-5 at 22). As part of the investigation, Kulp met with Brent Emerson in November 2021. (Doc. 1-2 at 9). During the meeting, Emerson asked Kulp how she talked to her male coworkers. (Doc. 1-2 at 9). While Kulp stated this made her feel responsible for the inappropriate comments, Kulp admitted that she used inappropriate language with her coworkers. (Doc. 41-13 at 7). Further, Kulp testified in her deposition that she never felt emotionally or physically unsafe at work. (Doc. 41-5 at 39).

The investigation revealed that Wetzel's comments were unsubstantiated, but all managers were coached on respectful and professional behavior. (Doc. 41-4 at 11). Further, Norfolk Southern could not substantiate that Wetzel "set [Kulp] up to fail" in directing her to operate the machinery. (Doc. 41-4 at 20; Doc. 41 at 12). While investigating Spadone's comment, Spadone admitted he made a joke, admitted it was inappropriate, was issued a letter of counseling, and was admonished to maintain professionalism within the workplace. (*Id.*). While Kulp asserted that there was grease on the handle of a truck, one of her coworkers took responsibility and explained that it was intended for the worker that would've been driving the truck that day, not Kulp. (Doc. 41-13 at 5).

After meeting with Emerson to discuss her complaints, Kulp called him to say that she did not want to work for Norfolk Southern under the current conditions. (Doc. 41-5 at 43). Emerson sent an email to Norfolk Southern Human Relations, Decker, and Ennis, notifying them of Kulp's verbal resignation. (Doc. 43 at 21-22). Decker informed Kulp that one of her allegations was substantiated, and Spadone would be disciplined accordingly. (Doc. 41-4 at 12). Kulp did not return to work, despite being

scheduled. (Doc. 43 at 20). Emerson continued investigating Kulp's claims, but Kulp told Decker and Emerson that she contacted an attorney and refused to participate further in the investigation. (*Id.* at 22).

Kulp filed this action in the Court of Common Pleas of Dauphin County, and Norfolk Southern removed the matter to this court. (Doc. 1). Kulp's complaint alleges that she was subjected to a hostile work environment in violation of Title VII and the PHRA. (Doc. 1-2). Norfolk Southern has now filed a motion for summary judgment, arguing that there is no genuine issue of material fact with respect to the claim against the company. (Doc. 39). Specifically, Norfolk Southern argues that Kulp has not established the elements of a hostile work environment claim, and alternatively, it is entitled to the *Faragher-Ellerth* defense. (Doc. 40).

After consideration, we conclude that there is no evidence in the record to create a genuine issue of material fact with respect to Kulp's claim. Accordingly, we will grant the defendant's motion for summary judgment.

III.    **Discussion**

A. **Motion for Summary Judgment – Standard of Review**

The defendant has filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.  Rule 56(a) provides that a court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The materiality of the facts will depend on the substantive law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  Thus, "[o]nly disputes over facts that might affect the outcome of the suit under governing law" will preclude summary judgment. *Id*.  A dispute is only genuine if a reasonable juror could find in favor of the nonmoving party. *Id*.

The moving party bears the initial burden to "demonstrate the absence of a genuine issue of material fact," relying on pleadings, depositions, affidavits, and other evidence in the record. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the movant "successfully points to evidence of all of the facts needed to decide the case on the law," the nonmovant can still defeat summary judgment by pointing to evidence in the record which creates a genuine dispute of material fact and from

7

which a jury could find in its favor. *El v. Southeastern Pennsylvania Transp. Auth. (SEPTA)*, 479 F.3d 232, 238 (3d Cir. 2007). However, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). A court may not make credibility determinations or weigh the evidence, but "must view the facts in the light most favorable to the non-moving party." *Hugh v. Butler County Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

## B. **The Defendant's Motion for Summary Judgment will be Granted.**

Kulp asserts a hostile work environment claim under Title VII and the PHRA, alleging that her supervisors subjected her to sexual harassment.[1] After a review of the record, we conclude that there is no genuine issue of material fact with respect to these claims.

Title VII prohibits employers from discriminating against and/or discharging their employees because of their sex. 42 U.S.C. § 2000e-

---

[1] The Third Circuit has held that "the PHRA is to be interpreted as identical to federal anti-discrimination laws except where there is something specifically different. . . ." *Fogleman v. Mercy Hospital*, 283 F.3d 561, 567 (3d Cir. 2002) (citation omitted). Accordingly, we will analyze Kulp's PHRA claim in conjunction with the Title VII claim.

2(a)(1). A plaintiff can establish a Title VII violation through proving that discrimination based on sex created a hostile or abusive work environment. *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986).

To prevail on a hostile work environment claim, a plaintiff must show that "1) the employee suffered intentional discrimination because of his/her sex, 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of *respondeat superior* liability." *Mandel v. M7Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013). A hostile work environment is judged by an objective standard, requiring a reasonable person to find that the environment is hostile. *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21 (1993). In determining a hostile work environment, courts look at the totality of the circumstances, including: "the frequency of the discriminatory conduct, its severity; whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance."

*Castleberry v. STI Grp.*, 863 F.3d 259, 264 (3d Cir. 2017) (quoting *Harris*, 510 U.S. at 22).

Regarding Kulp's assertion that her supervisors intentionally discriminated against her based on her sex, we conclude a reasonable juror could find the comments amount to intentional sex-based discrimination. To show intentional discrimination based on sex, the plaintiff must demonstrate that gender is a substantial factor in the discrimination, and that if she had been a man, she would not have been treated the same. *Tomkins v. Public Serv. Elec. & Gas Co.* 568 F.2d 1044, 1047 (3d Cir. 1977). "Courts and juries have found the inference of discrimination easy to draw in most male-female sexual harassment situations because…it is reasonable to assume those proposals would not have been made to someone of the same sex." *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 80 (1998).

Here, Kulp alleges intentional discrimination based on comments made by Dylan Wetzel regarding her sore throat and sniffing his seat, as well as the comment made by Joe Spadone about her being in the woods with a male coworker. We conclude that a reasonable juror could find that her supervisors made these sexually charged comments because

Kulp is a woman. *See e.g., Stewart v. Weis Mkts.*, 890 F. Supp. 382, 390 (M.D. Pa. 1995) (finding intentional discrimination when sexually-related epithets and insults were directed at a woman that were not directed at a man); *Moore v. Grove North America, Inc.,* 927 F. Supp. 824, 830 (M.D. Pa. 1996) (finding no intentional discrimination where no sexual innuendos nor gender-related language were used). Accordingly, a factfinder could conclude that Kulp suffered intentional discrimination based on her sex.

Although we have concluded that Kulp can likely show she was subjected to intentional, sex-based discriminatory comments, she has failed to show that the discrimination was severe or pervasive and that it detrimentally affected her. For harassment to be actionable, it must be so severe or pervasive as to "alter the conditions of [the victim's] employment and create an abusive working environment." *Meritor,* 477 U.S. at 7. Conduct that does not create an objectively hostile or abusive work environment is beyond Title VII's purview. *Jensen v. Potter*, 435 F.3d 444, 449 (3d Cir. 2006). Isolated incidents do not amount to harassment. *Id.* Additionally, "[t]he mere utterance of an epithet which engenders offensive feelings in an employee does not sufficiently affect

the conditions of employment to implicate Title VII." *See Meritor,* 477 U.S. at 91. Further, if the victim does not subjectively perceive the environment to be abusive, the conduct has not altered their employment, and there is no violation. *Id.*

Here, we cannot conclude that three arguably sexually suggestive comments made over the course of 15 months amount to severe or pervasive conduct in violation of Title VII. *See e.g.,* *Nitkin v. Main Line Health,* 67 F. 4th 565, 571 (3d Cir. 2023) (discussing that one or two statements in a six-month period did not amount to severe or pervasive harassment). While these comments may have been sexually suggestive and offensive, they do not reach the level that this Circuit has found to be severe or pervasive. *See, e.g., Starnes v. Butler*, 971 F.3d 416, 428 (3d Cir. 2020) (finding the conduct was severe or pervasive when the supervisor "coerced [plaintiff] into engaging in sexual relations, shared pornography with her, asked her to film herself performing sexual acts, engaged in a pattern of flirtatious behavior, scolded her for speaking with male colleagues, [and] assigned her duties forcing her to be close to him"); *Moody v. Atl. City Bd. of Educ.,* 870 F.3d 206, 215 (3d Cir. 2017) (finding a reasonable juror could view conduct was severe or

pervasive when the employer repeatedly propositioning plaintiff, "grabbed her," exposed himself to her, and "attempted to take her shirt off").

Further, Kulp has not presented evidence to show that any of the alleged conduct altered the terms or conditions of her employment. Kulp asserts that she received a provocative photograph and that coworkers put grease on the handle of her truck. At the outset, we note that the photograph incident took place prior to any of the alleged comments Kulp's supervisors made. Additionally, we cannot conclude that coworkers putting grease on her truck handle alters the terms and conditions of Kulp's employment. As the Supreme Court has reiterated "[a] recurring point in [our] opinions is that simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 271 (2001) (quoting *Faragher v. Boca Raton*, 524 U.S. 775, 788 (1998) (internal quotation marks and citations omitted)).

Further, Kulp testified that she never felt physically or emotionally unsafe during her employment and even used inappropriate language

with her coworkers. This does not demonstrate a subjective perception of an abusive environment. *See e.g., Bonson v. Hanover Foods Corp.*, 451 F. Supp. 3d 345, 356 (M.D. Pa. 2020) (finding that the plaintiff was detrimentally affected because he sheltered himself while he was at work to avoid harassment); *Moody,* 870 F.3d at 215 (finding that a reasonable person would be detrimentally affected in an environment where a supervisor expected his employee to give sexual favors in exchange for work, touched the employee without consent, made sexual comments, and exposed himself).

Here, Kulp's allegations regarding her coworkers' actions, at best, amount to isolated incidents of teasing, and further, have no logical connection to the alleged discriminatory comments. Additionally, Kulp's testimony that she never felt physically or emotionally unsafe at work belies her assertion that her work environment was abusive or hostile. Accordingly, in our view, no reasonable juror could find that the alleged discriminatory conduct rises to the necessary level of severe or pervasive to establish a hostile work environment.

We further conclude that Kulp cannot establish liability against Norfolk Southern because she has not shown she was subjected to a

14

tangible employment action. When the harassing employee is the victim's supervisor, the employer is strictly liable only if the supervisor's conduct rises to a tangible employment action. *Vance v. Ball State Univ.,* 570 U.S. 421, 424 (2013). "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998). However, if the supervisor did not take a tangible employment action against the employee,

> [T]he employer may raise as an affirmative defense to liability the fact that it "exercised reasonable care to prevent and correct promptly any sexually harassing behavior . . . and that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise . . ."

*Hitchens v. Montgomery County*, 278 F. App'x 233, 236 (3d Cir. 2008) (quoting *Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 150 (3d Cir. 1999) (internal citations and quotation marks omitted)). However, a plaintiff need not show a tangible employment action occurred if the alleged harasser is in such a position of authority that he "speaks for the corporate employer." *O'Brien v. Middle E.F.,* 57 F. 4th 110, 119 (3d Cir. 2023).

15

To the extent that Kulp alleges Norfolk Southern is strictly liable because her supervisors "speak for the corporate employer," we disagree. Kulp merely alleges that the individuals who made comments to her were her supervisors. However, "merely serving as a supervisor with some amount of control over a subordinate does not establish proxy status." *O'Brien*, 57 F.4th at 121. In fact, the Court of Appeals has explained that "'only individuals with exceptional authority and control within an organization can meet' this standard." *Id.* (quoting *Helm v. Kansas*, 656 F.3d 1277, 1286 (10th Cir. 2011)). Here, Kulp has provided no evidence establishing that these officials had such authority or control within Norfolk Southern as to "speak for the corporate employer." Accordingly, Kulp must show that a tangible employment action was taken against her.

Kulp, for the first time in her opposition brief, asserts that she was constructively discharged from Norfolk Southern. (Doc. 42 at 14) ("[O]ne could reasonably conclude that Norfolk Southern constructively discharged her."). A plaintiff may show she was constructively discharged by establishing "working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled

16

to resign." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 141 (2004). A constructive discharge constitutes a tangible employment action "when a supervisor's official act precipitates the constructive discharge." *Suders*, 542 U.S. at 140-41.

In this case, because we have concluded that Kulp failed to establish that the alleged conduct was severe or pervasive enough to establish a hostile work environment, we necessarily must conclude that she has not shown that she was subjected to such intolerable working conditions that would compel a reasonable person to resign. *See Spencer v. Wal-Mart Stores, Inc.*, 469 F.3d 311, 317 n.4 (3d Cir. 2006) ("To prove constructive discharge, the plaintiff must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment."). Accordingly, Kulp cannot establish that she was constructively discharged, and thus, suffered a tangible employment action required to establish *respondeat superior* liability.

Finally, even if we were to conclude that Kulp's hostile work environment claim should proceed, Norfolk Southern has established the affirmative defense commonly known as the *Faragher-Ellerth* defense. When the employer does not take a tangible employment action, the

defendant may raise this affirmative defense. *O'Brien,* 57 F. 4th at 119. Under this theory, an employer will not be held liable for a supervisor's alleged harassment if (1) the "employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior," and (2) the "plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Burlington Indus.,* 524 U.S. at 765.

One way that an employer can show it exercised reasonable care to prevent and correct sexual harassment is a showing that it had an anti-harassment policy with complaint procedure. *Burlington Indus.*, 524 U.S. at 765. Here, Norfolk Southern has established that it had such a procedure. In fact, the record shows that Kulp used this procedure to lodge complaints against her supervisors, and Norfolk Southern investigated each of her complaints. Regarding the second element, the record in this case shows that while Kulp lodged complaints with Norfolk Southern's EEO office, and the EEO office investigated her complaints, Kulp ultimately did not return to work and refused to continue to participate in the investigation.

Accordingly, we conclude that even if Kulp was successful in establishing her hostile work environment claim, Norfolk Southern would be entitled to the *Faragher-Ellerth* defense, and thus, would not be liable for the actions of Kulp's supervisors.

## IV.    Conclusion

For the foregoing reasons, the defendant's motion for summary judgment (Doc. 39) will be granted.

An appropriate order follows.

*s/ Daryl F. Bloom*
Daryl F. Bloom
Chief United States Magistrate Judge